UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

NICHOLAS J. SOUTHARD,

Plaintiff,

v.

BALLARD MARINE CONSTRUCTION, INC. and BALLARD MARINE CONSTRUCTION, LLC,

Defendants.

CASE NO. C19-5971 BHS

ORDER DENYING DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants Ballard Marine Construction, Inc. and Ballard Marine Construction, LLC's ("Ballard") motion to dismiss for lack of subject matter jurisdiction. Dkt. 22.[1] The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

[1] Ballard explains in its motion that while Ballard Marine Construction, Inc. employed Southard and contracted the project at issue and Ballard Marine Construction, LLC neither employed Southard nor was involved in the project at any relevant time, for the purposes of the instant motion the distinction between the entities is not relevant and the entities may be referred to collectively. Dkt. 22 n.1.

## I. PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiff Nicholas J. Southard ("Southard") brings claims against Ballard under admiralty and maritime law as modified by the Jones Act, 46 U.S.C. § 30104. Dkt. 21, ⁋ 2. He alleges that the Court has jurisdiction under 46 U.S.C. § 30104, the Jones Act, 28 U.S.C. § 1331, and 28 U.S.C. § 1367. *Id*.

Southard alleges that during all times relevant to this lawsuit, Ballard employed him as a commercial diver and Jones Act seaman. *Id*. ⁋ 6. Between January 6, 2017 and February 11, 2017, Southard alleges Ballard assigned him to a "multi-week saturation dive" on a tunneling project beneath the Suez Canal in Egypt. *Id*. ⁋ 16. During this period, Southard had to breathe "varying combinations of oxygen, helium, and nitrogen, due to the depth and pressure of operations ranging from five bars to an excess of seven bars." *Id*. Ballard's Hyperbaric Senior Project Manager, Justin Costello ("Costello"), declares that the while working on the tunneling project, Southard was in a saturation environment for thirty-five days. Dkt. 24, ⁋ 8.

The tunneling project at issue involved construction of two highway roads under the Suez Canal to connect Egypt and the Sinai Peninsula. *Id*. ⁋ 6. Costello declares that Southard volunteered for the project and that that the project employed Southard as a "Compressed Air Worker" in a pressurized, but dry and terrestrial environment and thus did not involve diving as the term is commonly understood. *Id*. ⁋⁋ 6–7. In a hyperbaric tunnel support project like the one beneath the Suez Canal, "[w]orkers often use a saturation technique and a hyperbaric chamber to work in the pressure environment," so commercial divers often do this work due to their familiarity with the environment, and

many of Ballard's employees are trained commercial divers. *Id.* ⁋ 4. The Compressed Air Workers "perform cleaning and maintenance of the cutterhead of the tunnel boring machine." *Id*.

Costello declares that Ballard is a marine infrastructure and utility contractor which performs marine construction projects and specializes "in a broad range of sectors, including hyperbaric tunnel support, hydroelectric, water utility, nuclear, industrial, port & waterfront development, diving services" and "marine casualty response & salvage." *Id.* ⁋ 3. Ballard has worked on tunnel support projects similar to the one at issue for the Seattle Metro Northlink Light Rail Line, the Mexico City Metro, the Toronto Subway extension, and the New York Subway extension. *Id*. ⁋ 5.

Southard declares that Ballard hired him as a commercial diver in October of 2008. Dkt. 17, ⁋ 4. Southard declares that he then worked for Ballard until he left the tunnel project at issue in February 2017, interrupted only by service in Iraq with the National Guard from September 2009 through Spring 2011. *Id*. He explains that he worked in "most facets of [Ballard's] wide-ranging work, servicing vessels and performing marine construction work," and "repaired underwater pipelines, salvaged sunken vessels, dredged channels, pile-drived pylons into the seabed, performed open water environmental clean ups, and inspected hulls of cargo ships while afloat." *Id*. ⁋ 5. He declares that when he did marine construction work, he would be classified as a "Diver, Tender, Dive Supervisor, Pile Buck, or Pile Buck Foreman," and when he worked on tunneling projects, he would be classified as a "Compressed Air Worker." *Id.* ⁋⁋ 8–9. He declares that as a Compressed Air Worker, he "could make more money in a

week than I would diving for a month. Thus, when a tunneling job became available, I would often take it because the money was so good." *Id*. ⁋ 9.

Southard lists nine "dive boats" which were "self-propelled vessels in Ballard Marine Construction's fleet during [his] employment." *Id*. ⁋ 6. He explains that some of the dive boats were "smaller vessels more akin to a skiff that we often used to move men and materials across the waterways as needed to support the project underway; sometimes we would dive from them too." *Id.* Other larger dive boats "were large enough to support a three or four-person dive team . . . use[d] as our base of operations for some of the underwater projects." *Id*. Southard declares that "[i]n addition to [his] dive responsibilities on the larger Dive Boats, [he] would run all of the Dive Boats . . . among other things, operate and navigate the vessels, handle the lines, dock and moor, and perform vessel maintenance." *Id*.

Southard alleges that his essential duties when working as a Diver were to "breath[e] compressed air or breathing gas mix; follow protocols and tables based on dive profile and use decompression chamber for oxygen decompression; use powerful hydraulic and pneumatic tools; maintain tools and dive equipment; work in confined spaces; work with poor visibility; and communicate with Dive Tender and Supervisor." Dkt. 21, ⁋ 13. Southard alleges that his essential duties as a Dive Tender/Pilebuck were to "clean and sanitize Diver's life support equipment; operate decompression chamber according to oxygen decompression tables and charts; manage dangerous gas levels inside the chamber while Diver inside; maintain all tools utilized on the job; and communicate with Diver and Supervisor." *Id.* When Southard was assigned as a

Compressed Air Worker or a Man Lock Tender, he alleges that his essential duties were the same as the duties of a Diver and a Dive Tender/Pilebuck, respectively. *Id.* ¶ 14.

Southard declares that over the course of his employment with Ballard, he "alternated between wet-diving underwater on marine construction projects and dry-diving on tunneling projects," sometimes within the same month, and "roughly 45% of [his] employment with [Ballard] was spent working in the service of vessels owned, operated and/or controlled by [Ballard] on navigable waters." *Id*. ⁋ 10. Costello declares that while Southard was working in Egypt, Ballard did not own, operate, or charter any vessels there, Southard was not assigned to or under the call or command of a vessel, and the "closest access to navigable waters was from the tunnel entrance which was approximately two (2) miles from the waters of the Suez Canal." Dkt. 24, ⁋ 9. Director of Risk Management for Ballard, Melanie Culp ("Culp"), declares that from January 1, 2016 through February 24, 2017 Southard was paid for a total of 1753 hours, "1251 (or 71% was on tunnel projects, 147 (or 8%) was for shop hours, and 355 (or 20%) was for commercial diving." Dkt. 23, ⁋ 7.

On October 11, 2019, Southard filed suit against Ballard. Dkt. 1. On January 16, 2020, Ballard moved to dismiss for lack of subject matter jurisdiction. Dkt. 13. The Court granted Defendants' motion with leave to amend on May 6, 2020. Dkt. 20.

Southard filed an amendment complaint on May 15, 2020. Dkt. 21. Southard alleges jurisdiction "under the admiralty and maritime law as modified by the Jones Act, 46 U.S.C. § 30104." *Id.* ⁋ 2. Southard alleges a claim for negligence under the Jones Act resulting in decompression sickness and distal small fiber neuropathy and a claim for

maintenance, cure, and unearned wages, specifying that Ballard failed to remove him from his work upon notice of injury and to ensure he received prompt medical treatment, thereby incurring liability for his maintenance, wages, and medical care. *Id.* ¶¶ 18–29. On June 12, 2020, Ballard again moved to dismiss for lack of subject matter jurisdiction. Dkt. 22. On July 6, 2020, Southard responded. Dkt. 25. On July 10, 2020, Ballard replied. Dkt. 28.

## II. DISCUSSION

### A. Standard

Federal courts are presumed to lack jurisdiction, and on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) the burden of proof is on the plaintiff to establish subject matter jurisdiction. *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Motions to dismiss brought under Rule 12(b)(1) may challenge jurisdiction factually by "disputing the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction," or facially by "asserting that allegations in the complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). For facial challenges, a plaintiff's allegations are assumed as true and the complaint is construed in his favor. *Id.*

In a factual attack under Rule 12(b)(1), courts "need not presume the truthfulness of the plaintiffs' allegations." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). Instead, a factual attack under Rule 12(b)(1) allows district courts to look beyond "the face of the pleadings, [and] review any evidence, such as affidavits and testimony, to resolve factual

disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Motions to dismiss for lack of subject matter jurisdiction "may be made as a speaking motion attacking the existence of subject matter jurisdiction without converting the motion into a motion for summary judgment." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (citations and internal quotations omitted).

"However, when 'ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment.'" *Id*. (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)). "Under this standard, 'the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id*. (quoting *Augustine*, 704 F.2d at 1077); *see also Leite v. Crane Co.*, 749 F.3d 1117, 1121 n.3 (9th Cir. 2014) (citations omitted) ("[A] court must leave the resolution of material factual disputes to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claims."). In other words, a "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone*, 373 F.3d at 1039 (citing *Sun Valley Gasoline, Inc. v. Ernst Enterprises, Inc.*, 711 F.2d 138, 139 (9th Cir. 1983)); *see also Augustine*, 704 F.2d at 1077. "The question of jurisdiction and the merits of an action are intertwined where 'a statute provides the basis for both the subject matter jurisdiction of the federal court and

the plaintiff's substantive claim for relief.'" *Safe Air for Everyone*, 373 F.3d at 1039 (quoting *Sun Valley*, 711 F.2d at 139).

**B. Federal Question Jurisdiction**

Southard's amended complaint alleges that the Court has jurisdiction pursuant to the Jones Act, 46 U.S.C. § 30104, and pursuant to supplemental jurisdiction, 28 U.S.C. § 1333. Dkt. 21, ⁋⁋ 2, 18–29.

The Jones Act provides a remedy for "any seaman" injured "in the course of his employment," 46 U.S.C. § 688, and allows a seaman so injured to bring a civil action at law with a jury trial, 46 U.S.C. § 30104. The issue of seaman status has been litigated extensively.

In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 350 (1995), the Supreme Court explained that it had previously determined that under the Jones Act, "a seaman's job need not be limited to transportation-related functions that directly aid in the vessel's navigation," and turned to the question of "what *relationship* a worker must have to the vessel, regardless of the specific tasks the worker undertakes, in order to obtain seaman status." (citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)). Tracing the development of the legal distinction between seamen and land-based maritime workers, the Supreme Court concluded "[i]t is therefore well settled after decades of judicial interpretation that the Jones Act inquiry is fundamentally status based: Land-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured, and seamen do not lose Jones Act protection when the course of their service to a vessel takes them ashore." *Id*. at 361.

The Supreme Court warned that "[i]n evaluating the employment-related connection of a maritime worker to a vessel in navigation, courts should not employ 'a 'snapshot' test for seaman status, inspecting only the situation as it exists at the instant of injury; a more enduring relationship is contemplated in the jurisprudence.'" *Id.* at 363 (quoting *Easley v. Southern Shipbuilding Corp.*, 965 F.2d 1, 5 (5th Cir. 1992)). "Thus, a worker may not oscillate back and forth between Jones Act coverage and other remedies depending on the activity in which the worker was engaged while injured." *Id*. (citing *Reeves v. Mobile Dredging & Pumping Co.*, 26 F.3d 1247, 1256 (3rd Cir. 1994)). The Supreme Court explained this was consistent with the interests of employers and employees in being able to predict who will be covered by the Jones Act "before a particular workday begins." *Id*. "Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." *Id*. at 371.

However, in considering how much of a plaintiff's course of employment to evaluate, the Supreme Court found no reason to consider exclusively "the overall course of a worker's service with a particular employer," explaining that seaman status may change with a worker's "basic assignment." *Id*. at 371–72 (citations omitted). "If a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Id*. at 372 (citing Joseph D. Cheavens, 64 Tulane L. Rev., 361, 389–90 (1989)).

Following *Chandris*, courts use its two-element test for seaman status. A plaintiff is a Jones Act seaman only if (1) his duties contribute to the function of the vessel or to the accomplishment of its mission, and (2) he has a connection to a vessel in navigation that is substantial both in duration and in nature. *Cabral v. Healy Tibbits Builders, Inc.*, 128 F.3d 1289, 1292 (9th Cir. 1997) (citing *Chandris*, 515 U.S. at 368).

> For the substantial connection requirement to serve its purpose, the inquiry into the nature of the employee's connection to the vessel must concentrate on whether the employee's duties take him to sea. This will give substance to the inquiry both as to the duration and nature of the employee's connection to the vessel and be helpful in distinguishing land-based from sea-based employees.

*Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 555 (1997). The issue of seaman status under the Jones Act "is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury." *Id.* at 554.

**1. Contribution to the Function of the Vessel or its Mission**

Southard argues that he meets the requirements of the first element because he "performed traditional seaman's work" and "contributed to the mission of vessels[.]" Dkt. 25 at 17. Ballard, on the other hand, argues that Southard "maintained no connection to a vessel or to the navigable waters whatsoever and therefore did not contribute to the function of a vessel or its mission." Dkt. 22 at 14. As discussed in the Court's previous order, "'[a]ll who work at sea in the service of a ship' are *eligible* for seaman status." *Chandris*, 515 U.S. at 368 (quoting *Wilander*, 498 U.S. at 354). Whether Southard meets this first element depends on the scope of employment the Court considers, and so

Southard's and Ballard's arguments about the appropriate scope of employment for consideration are best addressed in the context of the second element.

**2. Connection to a Vessel in Navigation**

Southard argues that he is entitled to seaman status because, at a minimum, material questions of fact exist on the issues of whether the essential duties of his employment changed when he transitioned from sea-based work to land-based work and whether he spent more than 30% of his employment in the service of Ballard's vessels. Dkt. 25 at 18-23. First, material questions of fact arise as to Southard's essential duties for his sea-based work versus his land-based work. This question of fact is critical to whether Southard meets the "*Barrett* Reassignment Exception." *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986), is a Fifth Circuit case originating the rule that a court is to consider a shorter period of employment in the seaman inquiry if "his essential duties or his work location is permanently changed," *id.* at 1075–76. The Supreme Court explicitly adopted this rule in *Chandris*, holding that if an employee "receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position." *Chandris*, 515 U.S. at 372. Therefore, the crux of the second element in this case is whether Southard's essential duties changed when he performed tunneling work.

The parties dispute if Southard's essential duties changed when he performed tunneling working as compared to when he performed diving work. Southard argues that his "assignments changed with each new [Ballard] contract, but [his] essential duties as

Diver and Dive Tender (and as Compressed Air Worker and Man Lock Tender) stayed the same." Dkt. 25 at 5; Dkt. 26 ⁋ 9. Ballard, on the other hand, asserts that "[t]he duties Southard performed in his marine work are fully and fundamentally separate and distinct from the duties of his tunnel work" and that "[t]he only similarity is in the use of technologies which permit work in the pressurized environment." Dkt. 22 at 15.

This dispute is similar to the one found in *James v. Wards Cove Packing Co.*, 209 Fed. Appx. 648 (9th Cir. 2006). In its unpublished opinion, the Ninth Circuit considered a district court's grant of summary judgment for a Jones Act negligence claim. *Id.* at 649. The district court found that there was no genuine issue of material fact as to whether the plaintiff was considered a seaman under the Jones Act and dismissed the case in favor the defendants. *Id.*; *see also James v. Wards Cove Packing Co.*, 409 F. Supp. 1252, 1259 (W.D. Wash. 2005). The district court held that the relevant period for determining the plaintiff's seaman status was his assignment at the time of incident because his essential duties had changed. *James*, 409 F. Supp. at 1256 (citing *Harbor Tug & Barge Co.*, 520 U.S. at 556). The Ninth Circuit reversed and, in applying *Chandris*, held that the plaintiff "presented sufficient evidence to raise a factual issue as to whether his essential duties were the same in Seattle during the winter 2002/2003 season and in Alaska during his employment with Wards Cove prior to the winter 2002/2003 season." *James*, 209 Fed. Appx. at 650. Consequently, there were disputed material facts as to plaintiff's Jones Act claim, and dismissal as a matter of law was improper. *Id.* at 649–50.

Here, Southard has alleged and declared that his essential duties as a Diver and Diver Tender/Pilebuck were the same as his essential duties as a Compressed Air Worker

and Man Lock Tender, respectively. Dkt. 21 ¶¶ 13, 14; Dkt. 26 at 5. Although Ballard argues that Southard's "essential duties changed sufficiently that only the tunneling assignment is relevant," Dkt. 22 at 15, it has failed to support this argument with undisputed facts. Therefore, whether Southard's essential duties changed when he performed the tunneling work at issue is a factual dispute that is intertwined with the statute providing the Court with subject matter jurisdiction making dismissal as a matter of law inappropriate.[2] *Safe Air for Everyone*, 373 F.3d at 1039.

But even if Southard's essential duties did change between his sea-based work and his land-based work, he has established a material question of fact as to whether the change was permanent. The *Barrett* Reassignment Exception applies only if an employee's "essential duties or his work location is *permanently* changed." *Barrett*, 781 F.2d at 1075–76 (emphasis added); *accord Chandris*, 515 U.S. at 371–72 ("[W]e see no reason to limit the seaman status inquiry . . . exclusively to an examination of the overall course of a worker's service with a particular employer. When a maritime worker's basic assignment changes, his seaman status may change as well."). Southard argues that his employment with Ballard "consisted of a series of temporary assignments for finite periods of time." Dkt. 25 at 1–2; *see also* Dkt. 21 ¶ 12. Ballard asserts that Southard's

[2] In this Court's previous order on Ballard's motion to dismiss, the Court found that "when performing tunneling work, Southard's essential duties changed sufficiently that only the tunneling assignment is relevant" and granted Ballard's motion with leave to amend. Dkt. 20 at 17, 19. In his Amended Complaint, Southard has alleged, and supported with a declaration, a link to Ballard's marine work while on tunneling assignments sufficient to create a dispute of material fact.

work on tunneling projects was not a temporary assignment and that "[b]y 2016, he was fully ensconced in [Hyperbaric Services (tunneling) Division] and primarily working tunneling projects." Dkt. 28 at 8. The permanency of Southard's work on tunneling projects is an obvious factual dispute[3] and is essential to determining whether the *Barrett* Reassignment Exception applies. *See Barrett*, 781 F.2d at 1075–76. This question of fact is also intertwined with the statute providing this Court with subject matter jurisdiction and must be left to the factfinders. *Leite*, 749 F.3d at 1121 n.3.

Likewise, a material question of fact exists as to the percentage of Southard's employment in connection to a vessel in navigation. Southard argues that since his essential duties remained the same, the Court should consider the scope of his entire employment with Ballard to determine the percentage. Dkt. 25 at 18–19. Southard declares that over the course of working for Ballard, from fall 2008 until February 2017, he spent roughly 45% of his employment "working in the service of vessels owned, operated, and/or controlled by [Ballard] on navigable waters." Dkt. 26 ⁋ 24. Ballard, on the other hand, urges this Court to consider Southard's employment only during the 35-day saturation project in January and February 2017. Dkt. 22 at 5 n.7. And Ballard also provides evidence that from January 1, 2016 through February 24, 2017 only 21% of Southard's employment was in connection to a vessel in navigation. Dkt. 23 at 7.

---

[3] Southard provides the declaration of McKenzie Tompkins ("Tompkins"), another diver employed by Ballard, to support his argument that his work assignments with Ballard were temporary because he remained subject to call of Ballard's vessels. Dkt. 25 at 23; Dkt. 27. Ballard argues that Tompkins's declaration is not relevant to the issue at hand. Dkt. 28 at 1–2. The Court does not rely on Tompkins's declaration to establish whether Southard's assignments were permanent or temporary.

However, Southard's essential duties when he performed land-based work as compared to sea-based work and, if his duties changed, whether that change was permanent is disputed, and the Court is unable to determine the relevant scope of Southard's employment at this stage. *See Chandris*, 515 U.S. at 368–69; *Harbor Tug & Barge Co.*, 520 U.S. at 554; *accord James*, 209 Fed. Appx. at 649. Consequently, the Court denies Ballard's motion to dismiss because material questions of fact exist as to whether Southard spent more than 30% of his employment with Ballard in the service of vessels.

## III. ORDER

Therefore, it is hereby **ORDERED** that Ballard's motion to dismiss, Dkt. 22, is denied**.**

Dated this 19th day of August, 2020.

BENJAMIN H. SETTLE
United States District Judge